**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNETTE RICHARDSON<br>P.O. Box 1714<br>Blue Bell, PA 19422<br><br>　　　　Plaintiff,<br>　v.<br><br>WUXI ADVANCED THERAPIES, INC.<br>4751 League Island Blvd.<br>Philadelphia, PA 19112<br>　　and<br>WUXI APPTEC, INC.<br>4751 League Island Blvd.<br>Philadelphia, PA 19112<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    CIVIL ACTION<br><br>No.: 21-4302<br><br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, Lynette Richardson (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by WuXi Advanced Therapies, Inc. and WuXi AppTec, Inc. (*hereinafter* collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, et. seq.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq*.), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff was unlawfully terminated by Defendants, and she suffered damages more fully described/sought herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving her right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. WuXi Advanced Therapies, Inc. is a global pharmaceutical, biopharmaceutical, and medical device outsourcing company, with a facility at the address as set forth in the above caption.

9. WuXi AppTec, Inc., is a global pharmaceutical, biopharmaceutical, and medical device outsourcing company, with a facility at the address as set forth in the above caption.

10. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13. Plaintiff was employed with Defendants for approximately 15 months, beginning on or about December 9, 2019, as a Scientific Technical Writer, working from Defendants' laboratories and manufacturing facilities located in Philadelphia, Pennsylvania.

14. Plaintiff was originally supervised by Dana Cipriano (Caucasian – *hereinafter* "Cipriano") until in or about June of 2020, at which time she began to fall under the supervision of Marguerite Dazilme (African-American – *hereinafter* "Dazilme").

15. Throughout her employment with Defendants, Plaintiff was a hard-working employee who performed her job well.

**-Race Discrimination-**

16. Plaintiff is a 49-year-old black (African-American) female, and at the time of her termination, she was the only African-American employee on her team of approximately 10-15 employees.

17. Upon Plaintiff's observations and belief, Defendants' work environment has been disparate and unfairly harsh toward black employees.

18. Throughout the course of her employment with Defendants, Plaintiff was subjected to racial discrimination, harassment, and disparate treatment by Defendants' management. For example, but not intended to be an exhaustive list, unlike her non-black co-workers, Defendants' predominantly non-black management and co-workers:

   a. Treated Plaintiff in a rude and demeaning manner, and regularly talked down to her;

   b. Selectively enforced policies against Plaintiff;

   c. Denied Plaintiff information and left her out of emails, meetings, and trainings vital to her job duties;

   d. Changed timelines and deadlines for projects without updating Plaintiff;

   e. At least one Caucasian co-worker, Joyce Powell (*hereinafter* "Powell") verbally attacked and threatened Plaintiff during meetings but was not disciplined for same;

   f. Criticized and berated Plaintiff for asking questions or clarifications during meetings, while Powell, who behaved hostilely toward Plaintiff, was not disciplined or verbally counseled for her behavior during meetings;

   g. Verbally admonished Plaintiff for the alleged performance issues of her Caucasian co-workers;

    h. Denied Plaintiff transfers to other departments while other Caucasian employees were transferred without issue;

    i. Caucasian employees, including but not limited to Cipriano and Powell, were permitted to work remotely on Fridays prior to the global COVID-19 pandemic, while Plaintiff was required to work on site in the office; and

    j. Falsely accused Plaintiff of petty infractions that were untrue.

19. Plaintiff complained of the aforesaid instances of disparate and discriminatory treatment on numerous occasions and to multiple levels of Defendants' management and Human Resources ("HR"), during her employment with Defendants; however, her concerns were never meaningfully addressed or investigated.

20. For example, on or about February 21, 2020, shortly after a meeting wherein Powell verbally and hostilely attacked and threatened Plaintiff, Plaintiff complained to HR and Powell that Powell's behavior toward her violated Defendants' policies and that "had [Plaintiff] been the one enraged and verbally attacked Ms. Powell, [Plaintiff] would have been terminated from the company and labeled an angry black woman."

21. Thereafter, on or about March 13, 2020, Plaintiff complained to Associate HR Director, Caryn Fischetti (*hereinafter* "Fischetti") that she was being bullied, harassed, and discriminated against because of her race and age (discussed further *infra*).

22. Plaintiff complained again on or about April 10, 2020, during a meeting with Senior HR Director, Cindee Porter (*hereinafter* "Porter") that she was being bullied, harassed, and discriminated against because of her race and age (discussed further *infra*).

23. Instead of meaningfully addressing Plaintiff's aforesaid concerns, however, during a May 5, 2020 meeting, Porter only vaguely informed Plaintiff that HR did find "issues" with how

several of Defendants employees had treated Plaintiff but claimed they had been "addressed" without further explanation.

24.     When Plaintiff informed Porter that she did not agree with the results of Defendants' purported "investigation," Porter abruptly attempted to change the narrative, claiming *__for the first time__* that Plaintiff had performance and communications issues that Porter had purportedly brought to Plaintiff's attention via email.

25.     When Plaintiff requested copies of the purported performance emails from Porter, Porter failed to provide them.  Instead, Porter issued Plaintiff an ultimatum – that she either undergo a Performance Improvement Plan ("PIP") or accept an unsolicited 6-week severance package (that Plaintiff was never provided a copy to review).[1]

26.     Before, Plaintiff was given an opportunity to respond to Porter's aforesaid ultimatum,[2] however, she was abruptly informed by Porter via email on or about June 8, 2020, that she was being placed on a PIP.

27.     The PIP that Plaintiff received in or about June of 2020, contained only vague, inaccurate accusations.  Moreover, in the section of the PIP stating "List of Previous Disciplinary

---

[1] *See Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed. R. Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

[2] Plaintiff was given *__only one day__* by Porter to decide.

Actions Leading to Performance Improvement Plan," none of the "verbal" or "written warning" boxes were checked off, despite Porter's claim that she had issued prior warnings to Plaintiff.

28. Additionally, during Plaintiff's 30-day PIP, she was required to attend only 3 of the 4 scheduled meetings, provided only positive feedback from Dazilme, and then never provided with a PIP close-out document or advised whether or not she had satisfied the PIP's requirements.

29. Instead, for the next several months, Plaintiff was subjected to increased hostility, animosity, and disparate treatment, including but not limited to, being denied the ability to apply for and transfer to a different department and being asked to address review comments and/or correct her manager's and another employees' work that was outside Plaintiff's area of knowledge.

30. As a result of the aforesaid hostility and animosity that Plaintiff continued to be subjected to by Defendants' management, she again complained to HR via memo on or about December 8, 2020, that she was still being treated unfairly because of her race and age (discussed further *infra*).

31. Almost immediately following Plaintiff's aforesaid December 8, 2020 complaints of discrimination, Plaintiff received a meeting invite from HR Business Partner, William Kessler (*hereinafter* "Kessler"), regarding an August 27, 2020 meeting (that had occurred some several months prior) in which Dazilme alleged that Plaintiff had screamed and yelled.

32. Despite the fact that Plaintiff acted respectfully and without yelling at the August 27, 2020 meeting and objected to same to Defendants' management, Dazilme recommended Plaintiff's immediate termination – ***some four months after the alleged and only after*** Plaintiff's complaints of race and age discrimination (discussed further *infra*).

33. Over the next few months leading up to her abrupt termination on or about March 18, 2021, Plaintiff engaged in several meetings with HR and Defendants' management, including but not limited to Dazilme and Kessler, regarding her concerns of race and age discrimination

(discussed further *infra*); however, Dazilme and Kessler continued to subject Plaintiff to hostility, animosity, disparate treatment, and pretextual admonishment for alleged performance issues that Plaintiff demonstrated as untrue.

34. Plaintiff reported Dazilme's and Kessler's aforesaid hostile and discriminatory conduct via email on or about March 12, 2021, to Defendants' CEO, David Chang (hereinafter "Chang") and Vice President of HR, Julie Oleynick (*hereinafter* "Oleynick"); however, Oleynick merely responded that she would "follow up with the HR team regarding your concerns."

35. Thereafter, Plaintiff was abruptly terminated on or about March 18, 2021, for purportedly violating Defendants' "respectful workplace policies" and "performance issues."

36. Defendants' reasons for Plaintiff's termination are completely false and pretextual because (1) Plaintiff worked hard for Defendants and performed her job well throughout her tenure; (2) ***Plaintiff was the one who had been threatened, treated disrespectfully, and had complained multiple times of same***; (3) Plaintiff interacted with and/or treated her co-workers and Defendants' management in a respectful and professional manner; and (4) Defendants raised Plaintiff's purported performance issues ***only after*** her aforesaid complaints of discrimination and retaliation.

37. Following Plaintiff's termination, she was offered an unsolicited severance agreement asking that she waive any and all claims against Defendants (including those for discrimination and retaliation) for a very small sum of money; however, Plaintiff did not sign the severance agreement.

38. Plaintiff believes and therefore avers that she was really subjected to a hostile work environment, pretextual discipline (including placement on a PIP), and terminated because of her race and/or her complaints of/objections to race discrimination.

8

## -Disability Discrimination-

39. In addition to being subjected to a hostile work environment, discrimination, and retaliation because of her race and/or her complaints of race discrimination, Plaintiff was also treated unfairly due to her serious health conditions and requests for accommodations.

40. Plaintiff has and continues to suffer from serious health conditions, including but not limited to long-standing knee conditions (patellar chondrosis) and allergies, resulting in mobility issues, and for which Plaintiff has a handicapped placard on her car.

41. At all times relevant herein, upon Plaintiff's information and belief, Defendants' management was aware that she suffered from disabilities as she utilized the handicapped spot at work on several occasions.

42. Despite her aforesaid health conditions and limitations, Plaintiff was able to perform the essential functions of her job. However, she did, at times, require some reasonable accommodations.

43. For example, in or about December of 2019, Plaintiff had been assigned to work in a trailer without ventilation, which exacerbated her allergies.

44. In or about February of 2020, Plaintiff brought in a doctor's note that requested that she be moved to another building, which was granted for about 1 month, before Plaintiff and other employees were instructed to work remotely as result of the COVID-19 pandemic.

45. Additionally, on or about May 5, 2020, Dazilme requested for the first time that Plaintiff go to a building under construction and unload heavy lab equipment and obtain serial numbers.

46. Because of her health conditions and limitations, Plaintiff had specifically asked Cipriano whether her position required lifting and moving lab equipment during her initial interview in or about 2019 – to which Cipriano replied no.

47. Following Dazilme's request to Plaintiff to unpack heavy lab equipment, Plaintiff requested from Porter the accommodation of not having to move the lab equipment as a result of Plaintiff's health conditions and limitations. Porter provided Plaintiff with forms to be completed by her physician.

48. Many doctors' offices were closed at that time (the height of the COVID-19 pandemic) or had limited availability, making it difficult for Plaintiff to obtain completed accommodation paperwork.

49. While Plaintiff was ultimately given the accommodation of not having to unload the heavy lab equipment, she was repeatedly badgered for her doctor's paperwork despite informing Porter that it was taking longer as a result of the COVID-19 pandemic.

50. Plaintiff also complained to HR on more than one occasion leading up to her termination, that her personal health information was being shared with her supervisor and other employees beyond HR, but her concerns were not addressed.

51. Instead, Plaintiff was subjected to increased hostility, animosity, and disparate treatment by Defendants' management, including but not limited to placement on a PIP and the denial of transfer opportunities, until her termination for pretextual reasons on or about March 18, 2021 (set forth *supra*).

52. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendants because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) her objections to her personal health information being shared.

**-Age Discrimination-**

53. Separately and apart from the hostile work environment, discrimination, and retaliation that Plaintiff was subjected because of her race and/or her complaints of race

discrimination, as well as her serious health conditions and requests for accommodations, Plaintiff was also subjected to discrimination and retaliation because of her age.

54. Plaintiff is a 49-year-old female, but she appears older (and has been told so in the past).

55. When Plaintiff was initially interviewed for her position on or about October 15, 2019, by Defendants' Project Manager, Bruce Gray (age 62, *hereinafter* "Gray"), Gray appeared overly concerned with Plaintiff's age.

56. Specifically, Gray asked during Plaintiff's phone interview, "since I am not across from you in person to see you for myself, what year did you graduate from college." When Plaintiff replied that she did not believe he could legally ask her questions to determine her age, Gray abruptly stated that the "interview is over," that Plaintiff would not be interviewing with anyone else, and that she could "see [her]self out."

57. Plaintiff then immediately contacted Defendants' Talent Acquisition Partner, Akila Shanmugara (*hereinafter* "Shanmugara") to complain of the age discrimination she had been subjected to in the hiring process.

58. Plaintiff was then given an interview with Cipriano and eventually hired. However, during her tenure with Defendant, Gray repeatedly made discriminatory age-related comments to Plaintiff.

59. For example, in or about November/December of 2020, Gray contacted Plaintiff via phone to purportedly discuss a project; however, he quickly turned the conversation to his impending retirement in April of 2021. Gray then went on to ask Plaintiff when she would be retiring, stating his belief that he and Plaintiff were "about the same age."

11

60. Plaintiff avers that following her aforesaid initial complaints of age discrimination, she was also left out of meetings and emails that involved Gray even though they pertained to her job duties and work that she needed to perform.

61. Plaintiff continued to complain of the aforesaid instances of discriminatory, retaliatory, and disparate treatment because of her age leading up to her termination, but her concerns were largely ignored.

62. Instead, Plaintiff was subjected to increased hostility, animosity, and disparate treatment by Defendants' management, including but not limited to placement on a PIP and the denial of transfer opportunities, until her termination for pretextual reasons on or about March 18, 2021 (set forth *supra*).

63. Following her termination, Plaintiff's Scientific Technical Writer job duties have been handled by a substantial younger (by approximately 20 years), less experienced, skilled, and tenured individual, who was hired shortly before Plaintiff's termination.

64. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, issued pretextual discipline (including placement on a PIP), and termination because of her age and/or her complaints of age discrimination.

## COUNT I
### Violations of 42 U.S.C. Section 1981
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
-Against Both Defendants-

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline (including placement on a PIP), and demeaning and/or derogatory treatment because of her race.

67. Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendants' management largely ignored them, left her legitimate concerns unresolved, and subjected her to even greater hostility, animosity, and disparate treatment.

68. Plaintiff was ultimately terminated on or about March 18, 2021, for completely pretextual reasons.

69. Plaintiff believes and therefore avers that she was really subjected to a hostile work environment, pretextual discipline (including placement on a PIP), and terminated because of her race and/or her complaints of/objections to race discrimination.

70. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

## COUNT II
## Violations of Title VII
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
### -Against Both Defendants-

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline (including placement on a PIP), and demeaning and/or derogatory treatment because of her race.

73. Instead of meaningfully investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendants' management largely ignored them, left her legitimate concerns unresolved, and subjected her to even greater hostility, animosity, and disparate treatment.

74. Plaintiff was ultimately terminated on or about March 18, 2021, for completely pretextual reasons.

75. Plaintiff believes and therefore avers that she was really subjected to a hostile work environment, pretextual discipline (including placement on a PIP), and terminated because of her race and/or her complaints of/objections to race discrimination.

76. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

## COUNT III
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

77. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to walking, lifting, and working (among other major life activities).

79. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

80. Plaintiff required reasonable accommodations from Defendants' including but not limited working in an area with ventilation (for her allergies) and the ability to refrain from lifting and moving heavy lab equipment.

81. Plaintiff was subjected to hostility and animosity due to her health and/or requests for accommodations through demeaning and/or discriminatory treatment towards her (set forth *supra*).

82. On or about March 18, 2021, Plaintiff was abruptly terminated for pretextual reasons.

83. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, issued pretextual discipline (including placement on a PIP), and terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) her objections to her personal health information being shared.

84. These actions aforesaid constitute violations of the ADA.

**COUNT IV**
**Violation of the Age Discrimination in Employment Act ("ADEA")**
**([1] Age Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**
**-Against Both Defendants-**

85. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86. While employed with Defendants, Plaintiff was subjected to discrimination based on her age by Defendants' management.

87. During Plaintiff's employment with Defendant, she was subjected to discrimination through disparate treatment, pretextual discipline (including placement on a PIP), and demeaning and/or derogatory treatment because of her age.

88. Instead of meaningfully investigating Plaintiff's aforesaid complaints of and/or objections to age discrimination, Defendants' management largely ignored them and left her legitimate concerns unresolved.

89. Plaintiff was ultimately terminated on or about March 18, 2021, for completely pretextual reasons.

90. Following her termination, Plaintiff's Scientific Technical Writer job duties have been handled by a substantial younger (by approximately 20 years), less experienced, skilled, and tenured individual, who was hired shortly before Plaintiff's termination.

91. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, issued pretextual discipline (including placement on a PIP), and terminated from her position with Defendants because of her advanced age and/or her complaints of age discrimination.

92. These actions as aforesaid constitute unlawful age discrimination under the ADEA.

### COUNT V
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
-Against Both Defendants-

93. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

94. Plaintiff reasserts each and every allegation from Count II of this First Amended Complaint, as such constitute identical violations of the PHRA.

### COUNT VI
### Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
-Against Both Defendants-

95. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96. Plaintiff reasserts each and every allegation from Count II of this First Amended Complaint, as such constitute identical violations of the PFPO.

### COUNT VII
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Actual/Perceived/Record of Disability Discrimination;
[2] Retaliation; and [3] Hostile Work Environment)

97. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

98. Plaintiff reasserts each and every allegation from Count III of this First Amended Complaint, as such constitute identical violations of the PHRA.

## COUNT VIII
### Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
### ([1] Actual/Perceived/Record of Disability Discrimination;
### [2] Retaliation; and [3] Hostile Work Environment)

99. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

100. Plaintiff reasserts each and every allegation from Count III of this First Amended Complaint, as such constitute identical violations of the PFPO.

## COUNT IX
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### ([1] Age Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
### -Against Both Defendants-

101. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

102. Plaintiff reasserts each and every allegation from Count IV of this First Amended Complaint, as such constitute identical violations of the PHRA.

## COUNT X
### Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
### ([1] Age Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
### -Against Both Defendants-

103. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

104. Plaintiff reasserts each and every allegation from Count IV of this First Amended Complaint, as such constitute identical violations of the PFPO.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.	Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.	Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.	Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.	Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.	Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.	Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

                Respectfully submitted,

                **KARPF, KARPF & CERUTTI, P.C.**

By:	*/s/ David N. Korsen*
   David N. Korsen, Esq.
   3331 Street Rd.
   Two Greenwood Square, Suite 128
   Bensalem, PA 19020

Dated:  June 20, 2022