IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNETTE RICHARDSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WUXI ADVANCED THERAPIES, INC., et al. | : | NO. 21-4302 |

MEMORANDUM

Bartle, J. November 18, 2026

Plaintiff Lynette Richardson has sued defendants WuXi Advanced Therapies, Inc. and WuXi AppTec, Inc. She claims the defendants, her former employers, illegally discriminated against her based on her race, disability, and age in violation of federal, state, and local laws.[1]

Before the court is defendants' motion for summary judgment on all counts.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there

1. Plaintiff brings claims for race discrimination under Section 1981 of the Civil Rights Act of 1866 ("Section 1981," 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§ 2000e et seq.), the Pennsylvania Human Relations Act ("PHRA," 43 PA. Stat. and Cons. Stat. §§ 951 et seq. (2026)), and the Philadelphia Fair Practices Ordinance ("PFPO," Phila., Pa., Code §§ 9-1101 et seq.) (Counts I, II, V, and VI). Plaintiff brings claims for disability discrimination under the Americans with Disabilities Act ("ADA," 42 U.S.C. §§ 12101 et seq.), the PHRA, and the PFPO (Counts III, VII, and VIII). Plaintiff brings claims for age discrimination under the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§ 621 et seq.), the PHRA, and the PFPO (Counts IV, IX, and X).

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draws all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence in the record for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

The following facts are undisputed.

During plaintiff's employment, WuXi Advanced Therapies, Inc. and WuXi AppTec, Inc. were interrelated and

integrated companies in the global pharmaceutical and medical device outsourcing industry.

In December 2019, plaintiff, an African-American female, was hired by defendants as a technical writer. During the interview process, defendants' employee Bruce Gray asked plaintiff what year she graduated from college. She told Mr. Gray that he should not be asking about her age. Mr. Gray responded that the interview was over and that plaintiff could see herself out. Plaintiff complained of this age discrimination to Akila Shanmugaraj, a Talent Acquisition Partner employed by Defendants. Ms. Shanmugaraj apologized and enrolled Mr. Gray in interview skills training. At the time of the interview, Plaintiff was 47-years-old. Plaintiff continued with the hiring process, was interviewed by several other employees, and was ultimately hired by defendants.

According to plaintiff, once she was on the job, various employees of defendants yelled at, bullied, and harassed her. She was also treated disrespectfully and left out of meetings, emails, and training sessions.

Plaintiff expressed concerns about being mistreated to her managers and Human Resources ("HR") representatives. She complained about the way she was treated on the following occasions:

(1) She complained at a February 2020 meeting with an HR director about racial and age discrimination and harassment;

(2) She sent an April 10, 2020 email to an HR director complaining about various mistreatment like bullying, harassment, and being asked to do work outside of her job description;

(3) She sent a May 6, 2020 email to an HR director complaining about mistreatment and providing notice of her intent to file a complaint against defendants with the United States Equal Employment Opportunity Commission and the Human Relations Commission, and to file a civil lawsuit for harassment, discrimination, and retaliation;

(4) She complained at a May 7, 2020 meeting with HR directors about being interrupted, talked down to, and being treated rudely;

(5) She had a conversion in the Summer of 2020 with her manager expressing that she was discriminated against because of her race, age, and disability;

(6) She complained at a June 11, 2020 meeting with her manager and HR directors about racial discrimination;

(7) She sent an August 26, 2020 email complaining about being treated disparately compared to her non-black colleagues;

(8) She had a conversation in December 2020 with her manager and HR director during which she complained about race, age, and disability discrimination;

(9) She sent a December 8, 2020 email to a Vice President of HR complaining about unfair treatment, harassment, and a hostile work environment;

(10) She sent a December 15, 2020 email to an HR Business Partner complaining about being conspired against and a toxic and hostile work environment;

(11) She sent a January 13, 2021 email to an HR Business Partner complaining about retaliation and a hostile work environment;

(12) She sent a March 12, 2021 email to a Vice President of HR and the CEO complaining about a toxic and hostile work environment; and

(13) She sent a March 18, 2021 email to her manager and an HR Business Partner complaining about bullying, harassment, and a hostile and toxic workplace.

In March 2020, August 2020, December 2020, and January 2021 plaintiff made internal transfer requests that were not granted. In March 2020, Associate HR Director Caryn Fischetti granted plaintiff an exception to company policy and allowed her to apply for an internal transfer to a different technical writer position despite being in her current role for less than one year. However, the position was taken down five days thereafter and plaintiff never applied. In August 2020, plaintiff reached back out to Ms. Fischetti asking if the exception allowing her to transfer was still valid. Ms. Fischetti responded that she would investigate the matter but never got back to her. In December 2020, Human Resources Business Partner William Kessler responded to plaintiff's request to transfer by stating that the positions she identified were contract positions not posted internally. In January 2021, Mr. Kessler replied to an email from plaintiff stating that for an internal transfer, company policy requires an employee to be in good standing with no Performance Improvement Plan or final written warnings within the past 12 months.

Plaintiff suffers from medical conditions including patella chondromalacia and serious allergies. She made several requests for accommodations during her employment. All were granted. According to plaintiff, Senior HR Director Cindee

Porter harassed her about providing documentation of her medical conditions during the Covid-19 pandemic.

Throughout her employment, HR personnel and plaintiff's managers characterized her behavior as problematic due to poor communication skills, unprofessionalism, argumentative behavior, lack of accountability, and poor teamwork and collaboration. On June 11, 2020 defendants, through plaintiff's then-current manager Marguerite Dazilme and her former manager Dana Cipriano, instituted a 30-day Performance Improvement Plan ("PIP") for plaintiff with the goal of improving her communication, accountability, and teamwork skills. On December 8, 2020 Ms. Dazilme delivered to plaintiff a "Memo to File" in which she wrote that plaintiff had "exhibited [the] same behaviors" that the PIP was intended to address, including "concerns around communication, accountability, and teamwork." Plaintiff was warned that another incident would be cause for termination.

On March 11, 2021, plaintiff, Marguerite Dazilme, who is African-American, and HR Business Partner William Kessler, who is white, gathered for a regularly scheduled meeting. According to Ms. Dazilme and Mr. Kessler, plaintiff yelled at them during the meeting. As a result, Ms. Dazilme decided on that same day to terminate plaintiff. On March 18, 2021 plaintiff received a letter from "WuXi HR" that she was being

terminated. Defendants included a termination explanation document, signed by Ms. Dazilme, that stated plaintiff was terminated because of "repeated violations of [defendants'] Workplace Conduct and Respectful Workplace Policies" including "unprofessional, inappropriate and combative behavior" that had not changed despite "a Performance Improvement Plan . . . verbal warnings, multiple meetings with various levels within the organization, and consistent coaching." Plaintiff signed the document confirming it was reviewed and discussed.

III

Plaintiff first claims that defendants subjected her to racial discrimination under Section 1981, Title VII, the PHRA, and the PFPO. She includes both a disparate treatment claim and a hostile work environment claim. As the race discrimination framework is the same under each law, the court will cite only Title VII precedents. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Joseph v. Cont'l Airlines, Inc., 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000). Title VII states that a covered employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

Disparate treatment claims based on circumstantial evidence utilize the burden-shifting framework the Supreme Court outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas burden-shifting framework proceeds in three steps: (1) the plaintiff must establish a prima facie case of discrimination; (2) if the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for their actions; and (3) if the defendant succeeds, the burden of production shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason was pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). At all times, the ultimate burden of proof rests with the plaintiff. Id.

To establish a prima facie case, plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

Here, there is no dispute that plaintiff is a member of a protected class, and defendants do not challenge that she was qualified for her position. The only adverse employment action in the record is the termination of plaintiff on March

18, 2021.[2] Whether plaintiff has made out a prima facie case depends on whether her termination occurred under circumstances that could give rise to an inference of intentional discrimination.

A plaintiff can show this element through comparators: evidence that similarly situated employees not in the same protected class were treated more favorably than plaintiff. Fuentes, 32 F.3d at 765. Plaintiff fails to produce a proper comparator. She alleges that a white employee in a similar role, Ms. Powell, yelled at her and displayed similar communication and behavioral issues, and was treated more favorably. However, this comparator fails. Ms. Powell reported to a different supervisor, was disciplined about yelling and reformed her conduct, and had not received a PIP. Ms. Powell was not similarly situated to plaintiff "in all relevant

---

2. Plaintiff also argues that the denial of her requests for lateral transfers, receiving the PIP, not being permitted to work remotely, and exclusion from certain emails, meetings, and assignments constitute adverse employment actions. They do not. A lateral transfer by itself does not always constitute an adverse employment action. Fallon v. Meissner, 66 F. App'x 348, 351 (3d Cir. 2003). While plaintiff requested lateral transfers orally and via email, plaintiff never actually applied for the positions. Plaintiff's other grievances are similarly not adverse employment actions. Reynolds v. Dep't of Army, 439 F. App'x 150, 153-54 (3d Cir. 2011); Cross v. Postmaster Gen. of United States, 696 F. App'x 92, 95 (3d Cir. 2017); Mingo v. Magic Hat Consulting, No. 14-cv-5433, 2015 WL 4578912, at *4 (E.D. Pa. July 30, 2015); Robinson v. Horizon Blue Cross Blue Shield of N.J., No. CIV.A. 12-2981, 2015 WL 4603647, at *5 (D.N.J. July 30, 2015), aff'd, 674 F. App'x 174 (3d Cir. 2017).

respects." Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Plaintiff also presents evidence that defendants' treatment of Nick Hibbard illustrates that white employees were treated more favorably. Mr. Hibbard was hired the same day as plaintiff, but as a lab manager rather than a scientific writer. Although Mr. Hibbard was granted a transfer in April 2020 while plaintiff's transfer requests were denied, plaintiff has not produced evidence that Mr. Hibbard was similarly situated. He had a different job role and different manager. Plaintiff has not shown that the circumstances surrounding Mr. Hibbard's transfer request were the same as the circumstances surrounding her own.

Finally, plaintiff argues the defendants' employees treated the general class of non-black employees more favorably. Plaintiff maintains that she was treated rudely, disrespectfully, and offensively, unlike her white counterparts. Furthermore, plaintiff was replaced by a white employee.

This argument fails. The record is devoid of any evidence that defendants' employees made racially discriminatory remarks, treated plaintiff differently because of her race, or otherwise engaged in racial discrimination. There is simply no evidence that any mistreatment of plaintiff resulted from racial

bias. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413-14 (3d Cir. 1999). The person who terminated plaintiff was Ms. Dazilme, like plaintiff an African-American. Although not dispositive, the fact that both are of the same race suggests against a finding of racial discrimination. Elwell v. PP&L, Inc., 47 F. App'x 183, 189 (3d Cir. 2002). Plaintiff states that if she had conducted herself the way some of her white counterparts did, she would have been labeled an "angry black woman." While this may have been plaintiff's perception, the record fails to demonstrate that any of defendants' employees ever considered or treated plaintiff as an "angry black woman." Plaintiff's subjective belief, without more, is insufficient to establish an inference of discrimination. Wilson v. Blockbuster, Inc., 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008) (citing Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000)).

Accordingly, plaintiff has failed to establish a prima facie case for disparate treatment based on her race. Even if plaintiff has done so, the burden then shifts to defendants to "articulate some legitimate, nondiscriminatory reason" for the termination. McDonnell Douglas, 411 U.S. at 802; see Fuentes, 32 F.3d at 763.

Defendants have met that burden by producing evidence that they terminated plaintiff because she yelled at her manager

after a series of unsuccessful corrective actions. Plaintiff was placed on a PIP that described specific instances of her poor communication skills and unprofessional behavior. Ms. Dazilme later delivered a Memo to File which similarly included specific documentation of plaintiff's communication, accountability, and teamwork issues. Ms. Dazilme made the decision to terminate plaintiff after plaintiff yelled at her during a meeting. The letter outlining the reasoning for plaintiff's termination provided specific examples of her communication and behavioral issues, all of which mirrored those outlined in the PIP and Memo to File spanning a period of approximately nine months.

Because defendants have produced a legitimate, non-discriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to show that the proffered reason was pretextual. Plaintiff may accomplish this by coming forward with evidence from which a factfinder could reasonably either: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Id. at 765.

Plaintiff disputes the veracity of defendants' assertions that plaintiff behaved unprofessionally and failed to communicate properly in the workplace. The inquiry, however, is not whether "the employer's decision was wrong or mistaken," but whether "discriminatory animus motivated the employer." Id.

Plaintiff maintains that defendants' proffered reason is pretextual. She focuses on a lack of progressive discipline, an unsolicited severance offer that included a waiver of legal claims, and inconsistent explanations regarding who ultimately decided to terminate her.

The series of corrective actions issued by defendants over nine months, including the PIP, Memo to File, and conversations from May 5, 2020 and May 7, 2020 demonstrate that plaintiff was consistently warned about the same issues for which she was fired. The evidence of an unsolicited severance offer, without any other circumstantial evidence that the termination was pretextual, is insufficient to support finding that the proffered reason was pretextual.[3]

---

3. Plaintiff cites Staffieri v. Nw. Hum. Servs., Inc., No. 12-cv-1612, 2013 WL 2245639, at *5 (E.D. Pa. May 22, 2013) to support the assertion that a severance offer made at the time of termination when such an offer is not a company policy is evidence of pretext. In Staffieri, unlike here, the plaintiff pointed to a series of reasons to suspect pretext in addition to the severance offer, such as an inconsistent date of termination decision, a lack of documentation of plaintiff's issues, and testimony that plaintiff was told not to worry about being terminated. Id. Because those contradictions, inconsistencies,

The record is undisputed that Ms. Dazilme made the initial decision to fire plaintiff after the March 11, 2021 meeting which included plaintiff, Ms. Dazilme, and Mr. Kessler. After the meeting, Ms. Dazilme asked Mr. Kessler whether the plaintiff's actions in that meeting were "sufficient for [her] to terminate this position[.]" Mr. Kessler subsequently explained to two other HR employees that Ms. Dazilme had decided to terminate plaintiff and the reasoning behind it. All three agreed with Ms. Dazilme's decision. Plaintiff urges the court to frame this interaction as a joint decision made by four individuals. Even accepting this as true, it is not evidence that these individuals crafted a pretextual reason for termination. The court finds that plaintiff has not produced any evidence that defendants' proffered reason for her termination were pretextual.

Plaintiff's hostile work environment claim for racial discrimination requires her to establish that: (1) she suffered intentional discrimination based on her protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) the existence of respondeat superior

---

or weaknesses are not present here, the severance offer alone does not satisfy plaintiff's burden.

liability. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). Courts are instructed to consider the record as a whole in determining whether a hostile work environment existed. Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001).

Plaintiff has not provided evidence of a single discriminatory remark, comment, slur, or joke related to her race. Instead, plaintiff relies on her general grievances such as being treated rudely, being yelled at and interrupted, being excluded from training sessions and meetings, and being placed on a "baseless PIP for non-existent performance issues." It may be true that plaintiff was mistreated, and it may be true that this detrimentally affected her. Yet, no evidence in the record suggests that this mistreatment was a result of any racial animus toward plaintiff. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-82 (1998).

Plaintiff again argues that if she were to have acted like her white colleague by screaming at a meeting, she would have been labeled the "angry black woman." This is a subjective, internal understanding of plaintiff, rather than evidence of defendants' discriminatory treatment. There is no evidence before the court of intentional race discrimination, let alone intentional race discrimination that is severe or pervasive.

IV

Second, plaintiff claims that defendants subjected her to disability discrimination under the ADA, the PHRA, and the PFPO. She brings both disparate treatment and hostile work environment claims. Analysis under the ADA applies with equal force to the PHRA and PFPO. Salley v. Circuit City Stores, Inc., 160 F.3d 977, 979 n.1 (3d Cir. 1998); Ransom-Ellison v. Childrens Hosp. of Phila., 826 F. Supp. 3d 616, 624 (E.D. Pa. 2026). The ADA prevents covered employers from discriminating against a qualified individual "on the basis of disability" regarding "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To establish a prima facie claim of disparate treatment disability discrimination under the ADA, plaintiff must show: (1) she is a disabled person under the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) she suffered an adverse employment action as a result of discrimination based on her disability. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

It is undisputed that plaintiff suffers from disabilities that fall under the protection of the ADA and that

plaintiff is otherwise qualified to perform the essential functions of the job. The only adverse employment action, as explained above, was plaintiff's termination.

To establish the third element of the prima facie case, plaintiff needs to point to evidence that defendants' disability discrimination "played a role in the employer's decisionmaking process and that it had a determinative effect." New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 301 n.4 (3d Cir. 2007). Courts look at several factors to determine this causation element including temporal proximity, whether a pattern of antagonism exists, and whether the record, taken as a whole, raises an inference of causation. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Plaintiff fails to come forward with any evidence that defendants or their employees treated her differently because of her disability. Plaintiff requested three accommodations and all three were granted. Plaintiff's assertion that she was treated rudely, disrespectfully, and offensively, in contrast to non-disabled colleagues, does not demonstrate that her disability was a determinative factor in her termination. None of the mistreatment was related to her disability. See Walton v. Mental Health Ass'n. of Se. Pa., 168 F.3d 661, 669-70 (3d Cir. 1999).

Plaintiff further argues that defendants' employees harassed her because of her disability by badgering her to provide medical documents despite medical offices being closed during the COVID-19 pandemic. The record demonstrates that in May 2020 plaintiff requested an accommodation to be excused from unloading heavy equipment. Senior HR Director Cindee Porter asked her for paperwork multiple times over a span of several weeks before ultimately making the accommodation. Plaintiff was never asked to unload heavy equipment in the interim. These facts do not establish a prima facie disability discrimination claim. There is no temporal proximity between the request for accommodation and the adverse employment action. There is no pattern of antagonism that followed the accommodation request. The record, taken as a whole, does not raise an inference of causation.

Plaintiff's disability discrimination claim fails because she cannot establish a prima facie case. Nevertheless, even if she were able to do so, defendants have provided a legitimate, nondiscriminatory reason for the termination and plaintiff has not produced evidence that the proffered reason is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

As discussed in connection with plaintiff's race discrimination claims, defendants have shown that plaintiff was

terminated because of a documented, long-running series of communication, teamwork, and accountability issues. Plaintiff's attempt to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" fails for the reasons explained supra. Fuentes, 32 F.3d at 765.

Plaintiff also brings a hostile work environment claim for disability discrimination. She is required to come forward with evidence that: (1) she suffered intentional discrimination based on her protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). Courts are instructed to consider the record as a whole in determining whether a hostile work environment existed. Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001).

Plaintiff's hostile work environment claim for disability discrimination falls short for substantially the same reasons as her race discrimination claim failed. Plaintiff has not called to the court's attention any evidence of a discriminatory remark, comment, or action based on her disability. Her recitation of general grievances such as being

yelled at and being treated disrespectfully, without any links to animus based on her disability, is insufficient.

V

Third, plaintiff claims that defendants subjected her to age discrimination under the ADEA, the PHRA, and the PFPO. She brings both disparate treatment and hostile work environment claims. Analysis under the ADEA applies with equal force to the PHRA and PFPO. Kautz v. Met-Pro Corp., 412 F.3d 463, 465 n.1 (3d. Cir. 2005); Higgins v. MetLife Inc., 687 F. Supp. 3d 644, 657 (E.D. Pa. 2023). Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

To establish a prima facie case for age discrimination under the ADEA, plaintiff must show that her age was the but-for cause of the adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). Plaintiff may use circumstantial evidence to establish a prima facie case through the McDonnell Douglas burden-shifting framework. Plaintiff must point to evidence that: (1) she is at least forty years old; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced by

another sufficiently younger employee so as to support an inference of a discriminatory motive. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015). It is undisputed that she has satisfied the first three factors.

There is no bright line rule for how large the age gap must be to qualify as "sufficiently younger." Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021). Our Court of Appeals has stated that a court should view "the record in its entirety" including "documented issues" surrounding the employee claiming age discrimination. Willis, 808 F.3d at 646.

Plaintiff, forty-nine-years old when fired, was replaced by Agnes Saba, forty-three-years old. The record is devoid of any other facts supporting an inference of a discriminatory motive. Mr. Gray's comment in the hiring process about when she graduated from college is of no probative value because he was not a decisionmaker, his remarks were made well over a year prior to her termination, and she was hired anyway. The record also establishes that Ms. Dazilme told plaintiff "oh you never worked in a lab" and insinuated that plaintiff did not have very much lab experience. Ms. Dazilme's remarks were directed to plaintiff's lack of experience. No reasonable inference can be drawn that plaintiff was discriminated against based on her age. Plaintiff produces no

evidence that similarly situated, younger employees were treated differently.

Assuming that plaintiff has made out a prima facie case, the court turns to the question of whether defendants' have "articulate[d] some legitimate, nondiscriminatory reason" for the termination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The McDonnell Douglas burden-shifting framework analysis from the race discrimination section, supra, applies with full force here because defendants offer the same nondiscriminatory reason for the same adverse employment action.

Again, defendants have demonstrated that they terminated plaintiff because of a documented, long-running series of communication, teamwork, and accountability issues. Plaintiff's attempt to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" fails for the reasons explained supra. Fuentes, 32 F.3d at 765. Plaintiff has no evidence that defendants' reason for her termination was pretextual.

Plaintiff also brings a hostile work environment claim for disability discrimination. She is required to establish: (1) plaintiff suffered intentional discrimination based on her protected class; (2) the discrimination was severe or pervasive;

(3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). Courts are instructed to consider the record as a whole in determining whether a hostile work environment existed. Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001). In assessing whether intentional discrimination rises to the level of "severe or pervasive," the court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Plaintiff, in support of her claims, simply relies on the comments and questions listed above from Mr. Gray and Ms. Dazilme. These do not reach the "severe or pervasive" standard. Mr. Gray made a single comment, before plaintiff was hired, not within earshot of others, and was not reasonably related to plaintiff's work performance. Ms. Dazilme's comment about plaintiff's lack of lab experience is totally irrelevant to her discrimination claim.

VI

Finally, plaintiff asserts that defendants unlawfully retaliated against her after she took the protected activity of complaining about race, disability, and age discrimination. Plaintiff's claims as to all three types of discrimination can be considered together because they are all subject to the McDonnell Douglas burden-shifting framework and have similar prima facie elements. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

Complaints to an employer about being treated discriminatorily, "whether oral or written, formal or informal," are a protected activity. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 287-88 (3d Cir. 2001). However, the complaints must specifically relate to the alleged illegal discrimination. General complaints of unfair treatment alone are not protected activities. Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995). Anti-discrimination laws are intended to prevent discrimination, not to "establish general standards for conduct of employers in dealing with employees." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 195 (3d Cir. 2015). In assessing whether a complaint is a protected activity, a court must consider the message conveyed in the complaint rather than the subjective intent of the person

conveying the message. Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 137 (3d Cir. 2006).

Plaintiff can establish the causal connection between the protected activity and the adverse employment action in a number of ways, including temporal proximity, inconsistent reasons given by defendants for taking the adverse employment action, or a pattern of antagonistic behavior by the defendants. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). Courts should look at the evidence as a whole. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). The individual responsible for the adverse employment decision, of course, must have had knowledge of the protected activities to support a retaliation claim. Daniels, 776 F.3d at 196-97.

There is no bright line rule to determine when the time between the protected activity and the adverse employment action is "unusually suggestive." Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007), as amended (Aug. 28, 2007). A gap of approximately three months is a common benchmark. Contrast Fasold v. Justice, 409 F.3d 178, 190 (3d Cir. 2005) with LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007).

Plaintiff made oral or written complaints on February 20, 2020, April 10, 2020, May 6, 2020, May 7, 2020, June 11,

2020, and August 26, 2020. Even portraying the facts in the light most favorable to the plaintiff, these complaints are well over three months removed from March 18, 2021, the date she was terminated. Since defendants have provided a consistent reason for the termination and plaintiff has not shown defendants to have engaged in a pattern of antagonistic behavior surrounding plaintiff's complaints, these complaints cannot serve as the basis for a retaliation claim.

Plaintiff also complained to defendants' employees via email on December 8, 2020, December 15, 2020, January 13, 2021, March 12, 2021, and March 18, 2021. The record reflects that these complaints were about mistreatment such as bullying, harassment, false accusations, and threats to terminate. Absent from these complaints is reference to discrimination based on plaintiff's race, disability, or age. Although plaintiff uses the terms "retaliation" and "hostile work environment" multiple times, she does not reference illegal discrimination based on her being in a protected class. Plaintiff used the term "discriminatory" only once, and it was in a vague reference to unspecific prior behavior without any link to a current complaint. She stated: "Please note that the former Associate Director as well as other individuals attending this meeting are among the individuals that were called out over the preceding months for their contentious, discriminatory, etc. behavior

toward me." Since "general complaint[s] of unfair treatment" do not equate to charges of illegal discrimination, these complaints are not protected activities that can support a retaliation claim. Barber, 68 F.3d at 702.

Significantly, only one of these complaints was made to Ms. Dazilme, the person that made the decision to fire plaintiff: the complaint from March 18, 2021, which plaintiff made prior to receiving the notice of termination on the same day. Complaints of which Ms. Dazilme had no knowledge cannot, of course, be the basis for a retaliation claim. Moreover, plaintiff's March 18, 2021 complaint to Ms. Dazilme was made after Ms. Dazilme had decided to terminate plaintiff.

Upon considering the record as a whole, plaintiff has not come forward with any evidence that she engaged in protected activities that can support a retaliation claim. Plaintiff's complaints did not include references to discrimination based on her protected classes. Plaintiff has not established a prima facie case of retaliation based on complaints of race, disability, or age discrimination.

VII

There are no genuine disputes of material fact. The court will grant the motion of defendants for summary judgment in all of plaintiff's claims.